## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ORANGE MIDDLE EAST AND AFRICA f/k/a FRANCE CABLES AND RADIOS,<br><br>　　　　　　Petitioner,<br>　　v.<br><br>REPUBLIC OF EQUATORIAL GUINEA,<br><br>　　　　　　Respondent. | Case No. _____ |

## PETITION TO CONFIRM ARBITRAL AWARD

Petitioner Orange Middle East and Africa ("Orange MEA") alleges as follows in support of this petition for confirmation and recognition of an arbitral award in the arbitration between petitioner and respondent the Republic of Equatorial Guinea ("Equatorial Guinea"):

### NATURE OF THE CASE

1.　　Orange MEA is commencing this proceeding to obtain a judgment confirming an international arbitration award (the "Final Arbitral Award"), pursuant to Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207. On July 8, 2014, an arbitral panel in Paris, France entered the Final Arbitral Award in favor of Orange MEA, awarding Petitioner €131,992,915 with interest from August 22, 2012, together with fees and costs of the arbitration and other relief. A copy of the Final Arbitral Award is attached as Exhibit 2 to the Declaration of Gerald Mazziotto ("Mazziotto Decl.").

1

## PARTIES

2. Petitioner Orange MEA is a company organized and existing under the laws of France with offices at 78, rue Olivier de Serres, 75015 Paris Cedex 15, France. Prior to January 2, 2015, Orange MEA's corporate name was France Câbles et Radio.[1]

3. Respondent Equatorial Guinea is a foreign state.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to section 203 of the Federal Arbitration Act, 9 U.S.C. § 203, because it is an action to confirm an arbitral award governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1950 (the "New York Convention").

5. This Court will have personal jurisdiction over Equatorial Guinea pursuant to 28 U.S.C. § 1330(b) once Orange MEA completes service on Equatorial Guinea pursuant to the methods permitted in 28 U.S.C. § 1608(a).[2] In the arbitration clause in the November 4, 2011 Settlement Agreement, Equatorial Guinea "expressly waive[d] its right to any immunity from jurisdiction and enforcement." Mazziotto Decl., Ex. 1 at art. 11.

6. Venue is proper in this District under 28 U.S.C. § 1391(f)(4) because Equatorial Guinea is a foreign state.

---

[1] Although the Final Arbitral Award and other documents refer to Petitioner by its former name, France Câbles et Radio, or FCR, this Petition refers to Petitioner as Orange MEA.

[2] Orange MEA will initiate service under the terms of the settlement agreement upon the filing of this Petition. 28 U.S.C. § 1608(a)(1). Orange MEA will file a certificate of service once service is complete and, if service cannot be completed, will seek the assistance of the Clerk of Court pursuant to 28 U.S.C. § 1608(a)(3).

## FACTUAL ALLEGATIONS

### The Settlement Agreement and Exit Clause

7.     In 1994, Equatorial Guinea and Orange MEA entered into a shareholders' agreement as the sole shareholders of Telecomunicaciones Socieded Anonima (GETESA) (referred to herein as "GETESA").  Mazziotto Decl., ¶ 3.  Equatorial Guinea and Orange MEA owned 60% and 40%, respectively, of the corporate capital of GETESA.  *Id*.  The purpose of GETESA was to provide telecommunications service in Equatorial Guinea.  *Id*.

8.     Disputes arose between the parties regarding the management of GETESA, including reciprocal allegations of violations of the parties' contractual agreements and GETESA bylaws.  *Id*., ¶ 4.  On November 4, 2011, the parties entered into a settlement agreement and a revised shareholders agreement to resolve their disputes.  *Id*.  A copy of the settlement agreement is attached as Exhibit 1 to the Mazziotto Declaration.  The revised shareholders agreement is appended to the settlement agreement.

9.     Article 9 of the settlement agreement contains an "Exit Clause," in which Equatorial Guinea made an "irrevocable promise" to purchase Orange MEA's 40% share in GETESA in the event that a telecommunications license is granted to a third party in Equatorial Guinea.  *Id*., Ex. 1 at art. 9.  In December 2011 Equatorial Guinea granted a telecommunications license to a third party, triggering the Exit Clause and Equatorial Guinea's obligation to purchase Orange MEA's 40% stake in GETESA.  *Id*., ¶ 6.  Equatorial Guinea did not follow through on its purchase obligation.  *Id*.

### The Arbitration

10.     Article 10 of the settlement agreement requires Orange MEA and Equatorial Guinea to attempt to amicably resolve any disputes that arise over enforcement of the settlement

3

agreement. Orange MEA sought to amicably resolve its dispute with Equatorial Guinea regarding the purchase of Orange MEA's stake in GETESA under the Exit Clause. Mazziotto Decl., ¶ 7. Orange MEA's efforts to resolve the dispute were unsuccessful. *Id.*

11. Article 11 of the settlement agreement contains the following agreement to submit unresolved disputes to arbitration:

> If the conciliation procedure prescribed in Article 10 above fails, the Parties agree that any dispute arising from or related to the Agreement shall be definitively settled in accordance with the ICC's arbitration regulations in accordance with this regulation. The arbitral tribunal shall consist of three (3) arbitrators and shall take place in Paris.
>
> The arbitral tribunal shall apply to the substantive issues in the dispute Equatoguinean law, with the exception of its rules of conflict. The languages used shall be French and/or Spanish for written communications, and hearings shall be held in French.
>
> The Parties pledge to maintain the strictest confidentiality with respect to the content of the arguments (be they oral or written) and the existence of the proceeding.
>
> The arbitral tribunal can order provisional or emergency measures that the Parties pledge, as of now, to execute.
>
> Arbitration costs shall be set by the arbitral tribunal and covered, equally, by the Parties. The arbitral tribunal shall determine their final costs.
>
> The arbitral award shall definitively bind the Parties.
>
> To the extent needed, the State expressly waives its right to any immunity from jurisdiction and enforcement. However, this waiver shall not allow the use of executive measures against State assets reserved exclusively for administrative, military or diplomatic use, or those pertaining more generally to the State's sovereignty.

*Id.*, Ex. 1 at art. 11.

12. On March 22, 2013, Orange MEA filed an arbitration request with the International Chamber of Commerce (ICC)'s International Court of Arbitration. *Id.*, Ex. 2 at 1. Orange MEA and Equatorial Guinea each selected one of the three arbitrators to serve on the

4

tribunal (the "Arbitral Tribunal"), and the third arbitrator was appointed in accordance with the ICC's Rules of Arbitration. *Id.*, Ex. 2 at 3. From August 2013 through February 2014 the Arbitral Tribunal solicited the parties' input regarding the conduct of the proceedings and issued six procedural orders. *Id.*, Ex. 2 at 3-6.

13. Equatorial Guinea disputed the Arbitral Tribunal's jurisdiction but refused to submit any arguments relating to the substantive issues in dispute. *Id.*, Ex. 2 at 5-6. The Arbitral Tribunal held a hearing in Paris on March 7, 2014. Seven representatives for Equatorial Guinea attended the hearing, including the state's Deputy Minister of Justice and Attorney General. *Id.*, Ex. 2 at 6.

14. On July 8, 2014, the Arbitral Tribunal issued the 47-page Final Arbitral Award in favor of Orange MEA. *Id.*, Ex. 2. Among other things, the Arbitral Tribunal:

- rejected Equatorial Guinea's challenge to the notification of the request for arbitration;
- rejected Equatorial Guinea's challenge to the Arbitral Tribunal's jurisdiction;
- concluded that the settlement agreement, including the Exit Clause and arbitration clause, are valid;
- ordered Equatorial Guinea to pay Orange MEA €131,992,915, plus interest, as payment for Orange MEA's stake in GETESA
- ordered Equatorial Guinea to pay Orange MEA (1) €1,830,613.79 as payment for fees and expenses incurred by Orange MEA during the arbitration and (2) $417,500 in arbitration costs; and
- ordered interim enforcement of the Final Arbitral Award.

*Id.*, Ex. 2 at 45-47.

15. The Arbitral Tribunal also noted that the Final Arbitral Award "*is binding*" and that the parties agreed to "*undertake to carry out the upcoming award without delay.*" *Id.*, Ex. 2 at 44-45 (citing Article 34(b) of the ICC Rules of Arbitration).

16. During the course of the arbitral proceedings, Equatorial Guinea stated that it would "appeal any decision by the Arbitral Tribunal for the sole reason of being unfavorable,

i.e., without considering the bases of fact and law underlying that decision." *Id*., Ex. 2 at 45.  In light of Equatorial Guinea's representation, the Arbitral Tribunal found that there is a "risk that enforcement of this Final Arbitral Award will be delayed for reasons whose justification, at this time, is difficult to anticipate" and accordingly authorized interim enforcement of the award without requiring Orange MEA to provide security.  *Id*.

### Proceedings in the Paris Court of Appeals

17. On August 7, 2014, Equatorial Guinea petitioned the Paris Court of Appeals to set aside the Final Arbitral Award.  Mazziotto Decl., Ex. 3 (Feb. 5, 2015, Order of Paris Court of Appeals) at 1.  While the appeal is pending, Orange MEA sought an order authorizing the enforcement of the Final Arbitral Award in France.  *Id*.  On February 5, 2015, the Paris Court of Appeals authorized the enforcement of the award.  *Id*.

### CLAIM FOR RELIEF
### 9 U.S.C. § 207

18. The New York Convention, as implemented by the Federal Arbitration Act, 9 U.S.C. §§ 201, *et seq*., governs confirmation of the Final Arbitral Award because it arises from a "commercial" relationship and does not arise out of a legal relationship entirely between United States citizens.  9 U.S.C. § 202.

19. Under the Federal Arbitration Act a "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York Convention]."  9 U.S.C. § 207.  None of the grounds listed in the New York Convention provides a basis for this Court to refuse confirmation of the Final Arbitral Award.

20. The Final Arbitral Award is final and binding on the parties.  The parties' arbitration agreement provides that an arbitration award "shall definitively bind the Parties."  Mazziotto Decl., Ex. 1 at art. 11.  Article 34, section 6 of the ICC Rules of Arbitration similarly

provides that any arbitration conducted pursuant to the Rules is "binding on the parties" and that "[t]he parties shall carry out any award without delay."

21. This petition is timely as it was filed within three years after the Award was made on July 8, 2014. 9 U.S.C. § 207.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests this Court enter a judgment:

A. confirming the Final Arbitral Award; and

B. awarding such other and further relief as this Court may deem just and proper.

DATED: June 8, 2015

Respectfully submitted,

By: _____

Richard H. Gordin
D.C. Bar No. 925727
**BUTZEL LONG, P.C.**
1747 Pennsylvania Ave. N.W., Suite 300
Washington, DC 20006
Telephone:  (202) 454-2800
Facsimile:   (202) 454-2805
gordin@butzel.com

_____
Daniel C. Girard (*pro hac vice* to be filed)

_____
Scott Grzenczyk (*pro hac vice* to be filed)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94104
Telephone:  (415) 981-4800
Facsimile:   (415) 981-4846
dcg@girardgibbs.com
smg@girardgibbs.com
*Attorneys for Petitioner Orange MEA*