UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ORANGE MIDDLE EAST & AFRICA** f/k/a **FRANCE CABLES & RADIOS,** | ) ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Civil Action No.  15-cv-849 (RMC) |
| **REPUBLIC OF EQUATORIAL GUINEA,** | ) ) ) ) ) | |
| Respondent. | ) ) | |

**OPINION**

Petitioner asks this Court to enforce an international arbitration award.  Because Respondent is a foreign state, Petitioner was required to effect service under the Foreign Sovereign Immunities Act.  Petitioner has failed to demonstrate that it followed one of the methods for service prescribed by FSIA, and thus proper service was never effected.  The petition must be dismissed without prejudice.

**I.  FACTS**

The following facts are taken from the operative pleading, Petition to Confirm Arbitral Award [Dkt. 1] (Pet.), and are taken as true in this procedural posture.  *Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).

Petitioner, Orange Middle East and Africa (Orange MEA), and Respondent, the Republic of Equatorial Guinea, were joint shareholders in a telecommunications company (Telecomunicaciones Sociedad Anonima or "GETESA") that provided service to Equatorial Guinea.  *See* Pet. ¶ 7.  Equatorial Guinea and Orange MEA owned 60 percent and 40 percent of the corporate capital of the company, respectively.  *See id.*

1

On November 4, 2011, after disputes between the two parties arose regarding the management of GETESA, the parties entered into a settlement agreement. *See id.* ¶ 8 & Ex. 1, Settlement Agreement [Dkt. 1-1 at 4] (Agreement). Article 9 of the Agreement contained an "Exit Clause," in which Equatorial Guinea made an "irrevocable promise" to purchase Orange MEA's 40% share in GETESA in the event that a telecommunications license were granted to a third party in Equatorial Guinea. *See* Pet. ¶ 9; Agreement at 5-6.

In December 2011, Equatorial Guinea granted a telecommunications license to a third party, triggering the Exit Clause. Pet. ¶ 9. However, Equatorial Guinea did not purchase Orange MEA's 40% stake in GETESA, as Article 9 of the Agreement required. *See id.* That failure precipitated the instant dispute.

Article 11 of the Agreement required Orange MEA and Equatorial Guinea to submit to arbitration any unresolved disputes over the settlement agreement. *Id.* ¶ 11; Agreement at 7. Specifically, it provided that should conciliation procedures fail, "the Parties agree that any dispute arising from or related to the Agreement shall be definitively settled in accordance with the ICC's arbitration regulations in accordance with this regulation. The arbitral tribunal shall consist of three (3) arbitrators and shall take place in Paris." Pet. ¶ 11; Agreement at 7.

On March 22, 2013, Orange MEA filed an arbitration request with the International Chamber of Commerce's (ICC's) International Court of Arbitration. *See* Pet. ¶ 12 & Ex. 2, Final Arbitral Award [Dkt. 1-1 at 70] (Award) at 1. According to Orange MEA, Equatorial Guinea disputed the arbitral tribunal's jurisdiction and "refused to submit any arguments relating to the substantive issues in dispute." *See* Pet. ¶ 13. Seven representatives for

Equatorial Guinea attended the hearing, including the Deputy Minister of Justice and the Attorney General.  *Id.*

On July 8, 2014, the tribunal issued its Final Arbitral Award in favor of Orange MEA.  *See id.* ¶ 14; Award at 47.  Among other things, it ordered Equatorial Guinea to pay € 131,992,915 plus interest and fees for Orange MEA's stake in GETESA.  Pet. ¶ 14.

On August 7, 2014, Equatorial Guinea petitioned the Paris Court of Appeals to set aside the Final Arbitral Award.  *Id.* ¶ 17.  This appeal was still pending at the time Orange MEA filed its petition.  *See id.*  Orange MEA also sought an order authorizing the enforcement of the Final Arbitral Award in France.  The Paris Court of Appeals authorized the enforcement of the award on February 5, 2015.  *See id.*

Orange MEA seeks a judgment from this Court confirming the arbitral award pursuant to Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207 (FAA).  *See id.* ¶ 1. Orange MEA alleges that the Court has subject matter jurisdiction under Section 203 of the FAA because the Petition constitutes an action to confirm an arbitral award governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention or Convention).  *See id.* ¶ 4 (citing FAA § 203).  Orange MEA maintains that the New York Convention, as implemented by the FAA, governs the confirmation of the Final Arbitration Award because it arises from a commercial relationship and does not arise out of a relationship entirely between United States citizens.  *See* Pet. ¶ 18; FAA § 202.

In its Petition, Orange MEA alleged that this Court would have personal jurisdiction over Equatorial Guinea, pursuant to 28 U.S.C. § 1330(b), once Orange MEA completed service on Equatorial Guinea as authorized by the Foreign Sovereign Immunities Act

(FSIA), 28 U.S.C. § 1608(a).  Pet. ¶ 5.[1]  Two months later, Orange MEA filed a Certificate of Service [Dkt. 8] (Certificate) indicating that Equatorial Guinea was served on August 6, 2015.

On the day its answer was due, Equatorial Guinea filed a motion to dismiss.  *See* Def. Mot. to Dismiss [Dkt 12-1] (Mot.).  Equatorial Guinea argues that the Petition should be dismissed because Orange MEA failed to serve it properly as required by FSIA § 1608(a).  Orange MEA has filed an Opposition [Dkt. 16] (Opp'n) and Equatorial Guinea has filed a Reply [Dkt. 17].  The motion is ripe for resolution.

## II.  LEGAL STANDARD

FSIA is the source of jurisdiction in federal court over claims against foreign states, their agencies, or their instrumentalities.  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  Under FSIA, "subject matter jurisdiction plus service of process equals personal jurisdiction."  *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987) (quoting *Tex. Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981)).  "[A] rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."

---

[1] Orange MEA also alleged that "[i]n the arbitration clause in the November 4, 2011 Settlement Agreement, Equatorial Guinea 'expressly waive[d] its right to any immunity from jurisdiction and enforcement.'"  *Id.* (quoting Agreement at 7).  The full provision of the Agreement reads:

> To the extent needed, the State expressly waives its right to any immunity from jurisdiction and enforcement. However, this waiver shall not allow the use of executive measures against State assets reserved exclusively for administrative, military or diplomatic use, or those pertaining more generally to the State's sovereignty.

Agreement at 7.

*Candido v. District of Columbia*, 242 F.R.D. 151, 162 (D.D.C. 2007) (citing 5B Wright & Miller, *Federal Practice & Procedure: Civil* § 1353 (3d ed. 2006)).[2]

There are two requirements to obtain personal jurisdiction over a foreign state under FSIA. First, there must be an exception to the sovereign immunity that otherwise applies under 28 U.S.C. §§ 1605-07 "or under any applicable international agreement." *See* 28 U.S.C. § 1330(a). Second, service must be made by one of the means identified in 28 U.S.C. § 1608. *See* 28 U.S.C. § 1330(b).

### III. ANALYSIS

Equatorial Guinea concedes that an exception to sovereign immunity exists, Reply at 3, and argues only that service was not made as required by 28 U.S.C. § 1608. That statute provides four means of serving a foreign state. First, if a "special arrangement for service" is in place between the plaintiff and the foreign state, a copy of the summons and complaint may be delivered thereunder. 28 U.S.C. § 1608(a)(1). Second, absent such an agreement, delivery may be made "in accordance with an applicable international convention on service of judicial documents." *Id.* § 1608(a)(2). If neither of those options can be used, the plaintiff may send the summons, complaint, a "notice of suit" and a translated copy of each to the head of the ministry of foreign affairs in the foreign state. *Id.* § 1608(a)(3). And finally, if the third option will not effect service within 30 days, the plaintiff may attempt to channel service through the U.S. State Department. *Id.* § 1608(a)(4).[3]

---

[2] The passage from *Candido* is quoted by Equatorial Guinea, Mot. at 3, although it also mentions in passing Federal Rules of Civil Procedure 12(b)(2) and 12(b)(4). *See* Mot. at 1. However, as its proposed Legal Standard suggests, it relies on Rule 12(b)(5) alone.

[3] The third and fourth options are slightly more complicated, but in ways that are irrelevant here.

The D.C. Circuit requires "strict adherence to the terms of 1608(a)." *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015) (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994)); *see also*; *Kettey v. Saudi Ministry of Education*, 53 F. Supp. 3d 40, 47 (D.D.C. 2014); *Opati v. Republic of Sudan*, 978 F. Supp. 2d 65, 68 (D.D.C. 2013); *Baumel v. Syrian Arab Republic*, 550 F. Supp. 2d 110, 113 (D.D.C. 2008); *BPA Intern., Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 84 (D.D.C. 2003). "Neither substantial compliance with § 1608(a)'s requirements nor actual notice of the suit excuses plaintiffs' deviation from the section's mandates." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 102 (D.D.C. 2005) (citing *Transaero*, 30 F.3d at 153-54).

In this case, Orange MEA argues that its petition and summons were "mailed via DHL to the Republic of Equatorial Guinea at the addresses provided in Article 12 of the Settlement Agreement." Certificate at 1. DHL delivered the documents to the Minister of Telecommunications on August 5, 2015 and to Equatorial Guinea's ambassador in Paris on August 6, 2015. *Id.* at 2. Orange MEA expressly relies on 28 U.S.C. § 1608(a)(1) and Article 12 of the Agreement to conclude that it "completed service on Equatorial Guinea on August 6, 2015." *Id.*

The problem is that § 1608(a)(1) does not apply here. Section 1608(a)(1) requires a "special arrangement *for service*," *id.* (emphasis added) and Article 12 is not such an arrangement. Rather, Article 12 describes how the parties were to transmit "notices, agreements, waiver declarations, and other communications made *under this Agreement*." Agreement at 7, 8 (emphasis added). Limited as it is to the Agreement, the language does not constitute a special arrangement for service of legal process under FSIA.

The distinction in the case law is evident. When a notice provision is all encompassing, it usually qualifies as a "special arrangement for service" under § 1608(a)(1). But when a notice provision is confined to the contract or agreement at issue, it does not qualify as a special arrangement for service.

Judges on this Court have regularly distinguished communications provisions limited to a contract/agreement and more general provisions. *Compare Int'l Road Fed'n v. Embassy of the Democratic Republic of the Congo*, 131 F. Supp. 2d 248, 251 (D.D.C. 2001) (finding special arrangement in lease provision that stated that "'[a]ll notices, demands, or requests between Sublessor and Sublessee shall be delivered in person, by certified mail, return receipt requested, or by registered mail . . . ."); *Marlowe v. Argentine Naval Comm'n*, 604 F. Supp. 703, 707 (D.D.C. 1985) (finding special arrangement under contract that provided, "[a]ll notices, requests, demands, or other communications to or upon the respective parties hereto shall be deemed to have been given or made when deposited in the mail, postage prepaid") *with Underwood v. United Republic of Tanzania*, No. 94-902, 1995 WL 46383, at *2 (D.D.C. Jan. 27, 1995) (finding no special arrangement when contract stated that "any notices 'required or permitted herein'" should be transmitted a particular way).[4]

Courts in other districts have adopted the same distinction. *See, e.g.*, *Berdakin v. Consulado de la Republica de El Salvador*, 912 F. Supp. 458, 466 (C.D. Cal. 1995) (finding no special arrangement in lease provision addressing "any demand, notice or declaration of any kind" made "under this Lease"); *Glencore Ltd. v. Occidental Argentina Exploration and Production, Inc.*, No. H–11–3070, 2012 WL 591226, at *5 (S.D. Tex. Feb. 22, 2012) (finding no

---

[4] Orange MEA distinguishes *Underwood* as a suit for breach of contract and not to enforce an arbitral award. The basis for a lawsuit does not affect the requirements for service on a foreign sovereign under FSIA. *See Underwood*, 1995 WL 46383, at *2.

special arrangement in contract stating "'[a]ll notices and other communications required to be given hereunder;" because such "language patently does not cover service of process, as service is not a notice or communication required to be given *under the contract*") (emphasis in original).

The provision in the Agreement between Orange MEA and Equatorial Guinea was restrictive. Agreement at 7, 8 ("... made under this Agreement"). As the decisions cited above made clear, service of legal process prescribed by § 1608(a)(1) is not a communication made under the Agreement. To the contrary, service is a communication made for the purposes of instigating a lawsuit. Such a lawsuit, apart from being made outside the Agreement, was likely not even contemplated by it; the parties agreed that arbitration would bind them both.

Orange MEA urges the Court to follow *G.E. Transportation v. Republic of Albania*, 693 F. Supp. 2d 132 (D.D.C. 2010), in which a member of this Court found a special arrangement for service in a contract provision requiring that "[a]ny notice to be given to [Albania] . . . shall be in writing . . . ." *Id.* at 136-37. The first ellipsis in the quote omitted the words "under these Conditions." The entire phrase was thus, "[a]ny notice to be given to [Albania] under these Conditions shall be in writing, and shall be sent by personal delivery, air post . . . ." The formal Contract at issue was a mere five pages, while the detailed contract terms were contained in a 68-page document titled Contract Conditions. *See* Decl. of Henry Weisburg, Ex. B, Contract Agreement & Contract Conditions, *G.E. Transp. Sys. v. Albania*, 08-cv-2042 (RMU) (D.D.C. Apr. 17, 2009), ECF No. 12-2. Since the Judge did not include the limiting words in his opinion, they were clearly not important to his analysis. To the extent that the Judge would have found a special arrangement even with the omitted words, this Judge disagrees.

Orange MEA labors to convince the Court that Articles 10 and 11 of the Agreement, taken together, encompass post-arbitration enforcement in court. Opp'n at 7 ("The Settlement Agreement and attached shareholders' agreement, however, set out a comprehensive framework to govern the relations between the parties."); *id.* at 8 ("Because this action seeks the enforcement of an arbitral award entered pursuant to Article 11 of the Settlement Agreement, service of process of this action arises under the provisions of the Settlement Agreement."). But the instant Petition was not, strictly speaking, filed "pursuant to Article 11 of the Settlement Agreement." By its terms, the Agreement provided for dispute resolution through conciliation and binding arbitration; that is the outer limit of the Agreement's reach. A Petition to enforce the ensuing arbitral award is another matter—one that must respect the sovereignty of Equatorial Guinea and conform to FSIA's prerequisites to jurisdiction in this Court.

The four methods of service allowed by §1608(a) are listed "in descending order of preference—meaning that a plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Opati v. Republic of Sudan*, 978 F. Supp. 2d 65, 67 (D.D.C. 2013). Orange MEA's attempt under the first method has failed. It may either retry that method (under another arrangement) or proceed to the second.

## IV.  CONCLUSION

FSIA's requirements for service of process on a foreign sovereign are strictly construed. Orange MEA has failed to prove the existence of a special arrangement between the parties. Respondent's motion to dismiss [Dkt. 12] must be granted. The Petition will be dismissed without prejudice. A memorializing Order accompanies this Opinion.

Date: May 18, 2016                                     /s/
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge